OLIVER IVESON, DAVID E. IVESON, E. O. IVESON, AND J. R. TAYLOR, Petitioners, *v.* SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE, DEPARTMENT 2 THEREOF, RESPONDENT.

No. 3577

May 26, 1949. 206 P.2d 755.

*Samuel Platt* and *Bruce Lehman,* both of Reno, for Petitioners.

*Thatcher, Woodburn & Forman* and *Wm. J. Kane,* all of Reno, for Respondent.

## OPINION

By the Court, WINES, District Judge:

This is a motion to quash and set aside a writ of certiorari which is before this court on these facts.

On November 9, 1948, the petitioners here, as plaintiffs, filed a complaint in the Second judicial district court of the State of Nevada, in and for the county of Washoe, in department 2 thereof, naming the United States Gypsum Company and the Pacific Portland Cement Company as defendants. This action was designated on the files of the said court as Civil Action No. 121194. For the purpose of easy reference, said action will hereafter be referred to as action No. 121194; the petitioners here, as plaintiffs, the movants here, who have joined with the respondent court in this motion, and who were defendants in action No. 121194, as defendants, and the respondent court as respondent.

Summons issued, service made on the defendant Pacific Portland Cement Company on November 9, 1948, at Reno, Nevada, and on the United States Gypsum Company on November 22, 1948, at Las Vegas, Nevada. On November 18, 1948 each defendant filed separately a petition for an order removing the action to the United States district court in and for the district of Nevada, and with the petition each filed a notice of intent to move for removal.

The motions for removal were heard together by the state court on November 18, 1948, and an order made and entered removing the action to the federal court. The plaintiffs appeared at the hearing by and through their counsel of record, and the record shows that no consent was entered or any objection waived.

On November 30, 1948, the plaintiffs applied for and the default of the defendant, Pacific Portland Cement Company, was entered by the clerk of the respondent court. Application was made to enter the default of the United States Gypsum Company on December 23, 1948, and was on the same day made and entered.

However, on December 24, 1948, at the request of counsel, the clerk of the state court erased the entry of the default on the docket theretofore entered against the United States Gypsum Company, and that defendant, on that date, filed a demurrer.

The plaintiffs filed in the United States district court, on December 23, 1948, a notice of motion and motion to remand civil action No. 121194, and served this on both defendants. This motion came on to be heard on the 14th day of January 1949. The parties appeared and an order was entered remanding the civil action No. 121194 to the state court. A copy of this order was forwarded to the clerk of the respondent court and received by him on January 18, 1949.

On that same day the defendants separately filed in the state court notice of motion to set aside and strike from the files a document entitled "Default." In the motion of the defendant, Pacific Portland Cement Company, the sole ground designated was that the defendant had appeared in the action by answer as construed in section 8792, N.C.L.1931–1941 Supp., prior to the entry of the default. The notice of the United States Gypsum Company showed the additional ground that at the time the default was entered, a true, full and correct copy of the complaint in action No. 121194 had not been served upon that defendant.

These motions were heard together on the 2d day of February 1949; testimony taken concerning the circumstances surrounding the erasure of the default against the United States Gypsum Company on the docket but on no other facts. The matter was argued and then submitted, and on March 2 the court rendered

its decision in which it designated the motions as motions to set aside a default and ordered "that the motion of each defendant above-named be granted."

On March 15, 1949, the plaintiffs filed their petition for a writ of certiorari in this court setting out all of these facts, alleging that the act of the district court was void and in excess of jurisdiction, and praying that the writ issue against the respondent court. Such a writ did issue and the defendants on behalf of themselves and respondent court have moved to quash and set aside the said writ on the following grounds.

(1) That the petition for the writ does not state facts sufficient to authorize the issuance of the writ.

(2) That from the allegations appearing on the face of said petition it appears that the inferior tribunal, to wit: The Second judicial court of the State of Nevada, in and for the county of Washoe, department 2 thereof, did not exceed the jurisdiction of said court in its order of March 2, 1949, in granting the motions of the respective defendants to set aside the purported defaults theretofore entered against each of said defendants by the clerk of said district court.

(3) That it affirmatively appears from the allegations of said petition that the petitioners herein have a right of appeal from the said order complained of in said petition.

(4) That petitioners have a plain, speedy and adequate remedy without resorting to the remedy afforded by a writ of certiorari.

(5) That the petitioners have not alleged in said petition any reason, or shown any injury resulting to the petitioners which would justify the issuance of the writ of certiorari.

(6) That the petitioners did not question by any proper pleading, motion or objection to the jurisdiction of the Second judicial district court of the State of Nevada, in and for the county of Washoe, department 2 thereof, to entertain, hear or make an order upon the

motions upon which the order here complained of is based.

(7) That this court should not in the exercise of its sound discretion have issued the writ of certiorari upon the facts stated in the petitioners' petition herein.

The additional facts of which we should take note here are that the new federal court rule, 28 U.S.C.A. sec. 1446, requires that the petition for removal be filed in the federal court, became effective on September 1, 1948. Prior to that time the procedure for removal, 28 U.S.C.A. sec. 72, required that the petition be filed in the state court.

An "Answer" has been defined by the applicable statute of this state, section 8792, N.C.L.1931–1941 Supp. (Stats.1937, 37) as being: "Any pleading or proceeding that raises an issue of law or fact whether the same be by general or special appearance."

It is the contention of the plaintiffs that as neither of the defendants ever appeared in action No. 121194, and as each was in default, the court in setting aside the default was acting in excess of jurisdiction for the reason that application was not made in the manner or upon any of the grounds designated by statute and was not granted on any of the grounds provided for by the statute. See 8640, N.C.L.1931–1941 Supp. (Stats.1939, 205). Whenever a statute affords a remedy, the jurisdictional requirements of the statute must be observed or the court is without jurisdiction to act. Yowell v. District Court, 39 Nev. 423, 159 P. 632.

The scope of a writ of certiorari extends only to a review of the judicial act of an inferior tribunal, board or officer which it is asserted acted in excess of jurisdiction. Section 9231, N.C.L.1929. The writ will issue where the inferior tribunal in the exercise of judicial functions has exceeded its jurisdiction. In re Rourke, 13 Nev. 253; In re Wixom, 12 Nev. 219; Degiovanni v. Public Service Commission, 45 Nev. 74, 197 P. 582; Ruddell v. Sixth Judicial District Court, 54 Nev. 363,

17 P.2d 693; State ex rel. Hinckley v. Sixth Judicial District Court, 53 Nev. 343, 1 P.2d 105.

■ It is of the order granting the defendant's motion to set aside and strike the defaults of the defendant that the plaintiffs complain and which they assert was in excess of jurisdiction. "Excess of Jurisdiction" describes that act which is within a judge's general power but which is not authorized because the conditions accrediting exercise of that power are wanting. See vol. 15, Words and Phrases, Perm.Ed., page 477.

■■ A motion to be relieved of a default under section 8640, N.C.L.1931–1941 Supp., must first of all be supported by affidavit showing good cause therefor, and must be based upon mistake, inadvertence, surprise or excusable neglect. Price v. Brimacombe, 58 Nev. 156, 72 P.2d 1107, 75 P.2d 734. Notice must be given to the adverse party and the lack of any one of these jurisdictional requirements would deprive the court of jurisdiction, though the district court has general jurisdiction to relieve of defaults. Thus an order made, which is not based upon a record showing all of these requirements, is in excess of jurisdiction. We here repeat a principle given recognition by this court many years ago. Where a statute prescribes the mode of acquiring jurisdiction, that mode must be complied with or the proceedings will be a nullity. Paul v. Armstrong, 1 Nev. 82. See also Yowell v. District Court, supra.

It would seem, therefore, that if the defendants' motions were addressed to the court's power to relieve of default, they were deficient in at least one respect— they were not based upon mistake, inadvertence, surprise or excusable neglect.

■ Careful consideration of the record furnished us, convinces, however, that the issue raised by the defendants' motion was not whether, because of any of the grounds specified in the statute, the defendants should be relieved of a default, but the issue was on the other hand, whether the defaults had been properly entered

and invoked the action of the court exercising a judicial power altogether different from that of its power to relieve of default. In the one instance the default is conceded and the court is concerned with the grounds for relief, which must have been specified. In the other instance the question is whether a default has been properly entered, if it has been entered. It is a motion to strike made on the ground that the record shows a default was improperly entered because of appearance made by the party.

Generally every court of record has an inherent authority to amend its records to make them speak the truth. Brockman v. Ullom, 52 Nev. 267, 286 P. 417. The true state of the record is to be determined by the court. A clerk acts in a ministerial capacity in entering a default. Price v. Brimacombe, supra. Whether or not a party has appeared in the action is a question of law and fact to be determined by the court. In the absence of a statute or court rule, a defect in any proceeding may be called to the court's attention by motion. State v. Springer, 40 Utah 471, 121 P. 976. Judges have control of the record so far as is essential to the proper administration of justice. Evans v. District Court et al., 50 Idaho 60, 293 P. 323. And the power the court exercises is not subject to defeat by any ministerial act or omission of the clerk. Happy Coal Co. v. Brashear, 263 Ky. 257, 92 S.W.2d 23.

We find the power which the court has to control its own proceedings described in the case Abelleria v. District Court, 17 Cal.2d 280, 295, 109 P.2d 942, 132 A.L.R. 715. This power is judicial in character and can only be exercised by a court. It is inherent and its source is found in the proposition that a court must have such ancillary and incidental jurisdiction to effectuate its general jurisdiction.

To allow an officer of the court, such as the clerk, to exercise this power may not only be unconstitutional

(See Art. VI, section 109, Nevada Constitution) but would result in such practical difficulties as to make orderly administration of justice difficult. We have only to suppose one or two situations to make this clear. In fact, the matter before us adequately illustrates the point if we consider for the purpose of making the point that the clerk was entirely wrong in entering the defaults. In any given situation involving the clerk and the remedial rights of the litigants, the clerk, except as he might be controlled by appeal or other proceedings, would determine what would be heard by the court. From time to time the clerk in order to act at all would have to determine the character of documents filed with him, and it is no answer to the problem to say relief might be had by appeal or other remedy.

We have determined that the court had jurisdiction to entertain such a motion. The record as set out by the plaintiffs shows that plaintiffs were properly noticed and appeared to resist the motion.

A motion is a proceeding directed to a court's authority to act on a given subject. It is an application for an order and "every direction of a court or judge made or entered in writing, and not included in a judgment, is denominated an order." Section 8909, N.C.L. 1929. Notice is required (See section 8911, N.C.L.1929) and must be given in the time and manner prescribed by statute. See section 8911, N.C.L.1929; sections 8914 to 8922, N.C.L.1929, inclusive.

Beyond this our inquiry should not go. We are limited by statute and the decisions of this court to a determination of whether the act complained of was in excess of jurisdiction on a writ of certiorari. We are not, therefore, concerned with the merits, nor in correcting or modifying the order made by the court.

"The boundary between an error of judgment and the usurpation of power is this: The former is reversible by an appellate court within a certain fixed time, and is

therefore only voidable, while the latter is an absolute nullity, and, when jurisdiction once attaches, proceedings thereafter in the litigation, though erroneous, cannot operate to divert it, but the judgment is binding until reversed. This principle has been laid down in the forcible expression that the power to decide necessarily carries with it the power to decide wrongly as well as rightly, and is subject to the qualification that the court can render only such judgment as does not transcend in extent or character the law which is applicable to that class of cases." Wilson v. Morse, 25 Nev. 375, 60 P. 832. This rule received further approval in Hilton v. Second Judicial District Court, 43 Nev. 128, 183 P. 317, 319, where the court, speaking through Mr. Justice SANDERS, stated: "It is further insisted by counsel for petitioner that the court erred in determining that the defendant's cause of action for support and maintenance was brought within the statute. Stats. 1913, p. 120. If this be error, it was not in excess of jurisdiction, and may be corrected by the usual mode for the correction of errors."

More recently, in Cornbleet v. Second Judicial District Court, 58 Nev. 227, 73 P.2d 828, 829, where it was contended that the court was without authority to appoint a guardian ad litem for a party defendant, first, because no evidence was received as to the fitness of the appointee before appointment, and, secondly, because the evidence showed him to be disqualified, this court said: "Consequently, the sufficiency of the evidence which petitioner claims shows that the court acted without authority in making the appointment will not be reviewed." This court determined in that case that the district court had jurisdiction to enter such an order, that the order of the court issued after the jurisdictional requisites had been satisfied. See, also, McLeod v. District Court, 39 Nev. 337, 157 P. 649.

We reiterate that the right to decide does not depend upon adjudging correctly; the test is whether the court

had authority to make any order, not the nature of or sufficiency of the evidence acted upon. This has been very clearly set out in State ex rel. Hinckley v. Sixth Judicial District Court, supra [53 Nev. 343, 1 P.2d 108], where we find this language: "It is not contended that the court did not have jurisdiction to rule upon objections to tendered evidence as a general proposition, but that the court ruled incorrectly in the matter in question and by so doing divested itself of jurisdiction. This court has often taken the contrary view. In Phillips v. Welch, 12 Nev. 158, 170, it was said, in speaking of a determination by the district court in a contempt proceeding: 'It may have erred. Whether it did or did not, it is not our province in this proceeding, to inquire. We are prohibited by the statute from investigating this question. Even admitting that the court erred in the conclusions it reached, yet all the authorities above cited hold that error in judgment, in respect to a question which the court is authorized to investigate and determine, does not, by any means, constitute an excess of jurisdiction. If it did, then every error committed by any inferior tribunal, in the course of judicial investigations, would be in excess of jurisdiction, and the writ of certiorari would be converted into a writ of error instead of remaining, where the statute has placed it, a writ of review. * * *'

"These veiws are sustained by many decisions of this court, as shown in State v. [Second Judicial] District Court, 32 Nev. 189, 105 P. 1022. See also State v. McFadden, 43 Nev. 140, 182 P. 745.

"We do not think the court exceeded its jurisdiction in rejecting the tendered evidence."

The test, therefore, is whether jurisdictional requisites have been met, and plaintiffs have not shown any were lacking. Plaintiffs' petition is based upon the premise that the default was an accomplished fact, a point on which the defendants took issue. The court agreed with the defendant and if, in so doing, committed error, we

are not on a writ of certiorari permitted to review the question on its merits.

It is an inescapable conclusion from the cases just discussed, and it is so stated in Mack v. District Court, 50 Nev. 318, 258 P. 289, that "On certiorari to review order in receivership proceedings where lower court had jurisdiction to make order complained of, the writ will not issue, and it is immaterial whether the order was appealable or not."

The motion that the writ of certiorari be vacated and set aside should be granted; it is so ordered.

EATHER, J., concurs.

Chief Justice HORSEY being unable to participate in this case because of illness, the Governor appointed the Honorable TAYLOR WINES, District Judge, to sit in his stead.

BADT, J. (dissenting):

I agree with the reasoning of the majority opinion and with the authorities therein cited and with the well-recognized limitations of the functions of the writ of certiorari. The majority opinion likewise recognizes the rule that where a statute prescribes the mode of acquiring jurisdiction that mode must be complied with or the proceedings will be a nullity. We part company in the determination of the nature of the proceedings in the court below wherein the defendants there moved for an order setting aside their respective defaults. The majority opinion concludes that the issue there rasied "was not whether, because of any of the grounds specified in the statute, the defendants should be relieved of a default, but the issue was, on the other hand, whether the defaults had been properly entered and invoked the action of the court exercising a judicial power altogether different from that of its power to relieve of default." That the clerk in entering a default acts in a ministerial capacity is clear. Price v. Brimacombe, 58 Nev. 156, 72 P.2d 1107, 75 P.2d 734.

But that the general power of a court to make its records speak the truth and to correct defects in proceedings and to control its records for the proper administration of justice may be extended to include the situation presented here is by no means supported by the record. The separate motion of each defendant was for an order "to set aside and strike from the files herein that certain document denominated 'default' which purports to have been entered by the clerk. * * * " The motion was to set aside the default. The motion to strike the document denominated "default" added nothing to it. Such document is merely an instrument used by the county clerk reciting the date of service appearing from the return of summons and the failure of the defendant to answer within the time allowed by law and the entry of the default. The motion made in each case was upon the ground that the petition for removal filed in the state district court was an answer. The additional ground that the defendant had not been served with "a full, true and correct copy" of the complaint we need not consider, as the point involved a minor clerical discrepancy. The court minutes of February 2, 1949 show that such date was the time set for the hearing of "defendants' motion to set aside the default" and that counsel for United States Gypsum Company "made its motion to set aside the default." The minutes of the same date show that counsel for defendant Pacific Portland Cement Company "made its motion to set aside the default." The minutes further show that affidavits were filed by the plaintiffs in opposition to the "motion to set aside default." The minutes of February 4 show that such was the time to which the argument on defendants' "motion to set aside default" was continued, and "the motion" stood submitted. The minutes of March 2, 1949 show the following:

"The court at this time rendered its decision on defendants Pacific Portland Cement Co. and the United

States Gypsum Co., motions to set aside default which had heretofore been entered, said motions having heretofore been argued and submitted, and ordered the motion of each defendant above named be granted."

The motions before the district court were simply motions to set aside the defaults, nothing more. I do not overlook the distinction sought to be made by my learned associates—that the defendants contended that the defaults had been unlawfully entered, while the usual motion would admit the default and seek relief from it. But if as a matter of law the defaults were lawfully entered, the defendants could not by persisting in their error by-pass the jurisdictional requirements necessary to obtain relief. They could not create a jurisdiction to act, on the theory that the order sought "would make the record speak the truth." It already spoke the truth. Adding one error to another could not build up a jurisdiction that could be invoked only in the statutory manner.

The main question thus presented to this court is whether the jurisdiction of the district court to entertain, hear and grant such motion to set aside these defaults was ever properly invoked. Section 8640, N.C.L., referred to in the prevailing opinion, provides that: "The court may, * * * upon such terms as may be just, and upon payment of costs, relieve a party or his legal representatives from a judgment, order, or other proceeding taken against him through his mistake, inadvertance, surprise or excusable neglect * * *." The liberality of district courts and of this court in granting such relief has been evidenced many times, and all courts have uniformly adhered to the desire that all cases be tried upon their merits wherever possible. Just why the defendants in the court below steadfastly avoided any motion for relief under this statute does not appear. They relied entirely upon their contention that their respective motions to remove comprised

answers under the statutory definition. The prevailing opinion does not reach this point, but there is no reason why it should be avoided. This court in other cases, and notably in State ex rel. Hinckley v. Sixth Judicial District Court, 53 Nev. 343, 1 P.2d 105, held in an appeal from a conviction for contempt that it was error for the district court to exclude testimony which would have shown justification for the contemnor's acts but that such error was within jurisdiction. There can be little question but that the district court's order setting aside the defaults upon the only ground asserted, namely, that the motion to remove constituted an answer, was error.

The only authority for the removal of a cause from a state court to a federal court must be found in the acts of congress. Under the amendment a petition for removal must be filed in the federal court, and the filing of the petition in the state court in the instant case had no legal effect whatsoever. The petition thus filed was a fugitive or vagrant paper, having no more effect than if it had been filed in this court or in the court of some justice of the peace, or if it had prayed for permission to change the corporate name of the defendant, or for permission to change its capital stock structure. Although addressed to the district court, its filing failed to invoke the exercise of any discretion, judgment or power of action of any kind whatsoever. It was a complete nullity. Being so, the court was without jurisdiction to act upon it. As above noted, the majority opinion does not reach this situation. On the other hand this conclusion must be just as clear to my learned associates. Their conclusion, however, means that although the petition for removal was a vagrant paper and although the county clerk therefore acted properly in entering the defaults, and although the district court was in error in setting aside the defaults upon the ground asserted, its general jurisdiction over the parties

and the subject matter and its power to make its records speak the truth resulted in the vesting of its jurisdiction to decide wrongly as well as correctly, and that its erroneous order setting aside the defaults must therefore stand until reversed on appeal—a fate which in my opinion inevitably confronts it (if plaintiffs should be unsuccessful and should appeal) even in view of the majority order vacating the writ of certiorari.

As the removal proceedings were a nullity and the defaults were therefore properly entered by the ministerial act of the clerk, the jurisdiction of the dictrict court to set aside the defaults could be invoked only by proper application and statutory procedure as provided in N.C.L. sec. 8640. My learned associates present the hypothetical situation "if we consider for the purpose of making the point that the clerk was entirely wrong in entering the defaults." I do not think that we need to consider such a hypothetical situation. His erroneous ministerial act in such case would be a mere nullity. Relief might possibly be had in a number of ways which we need not consider. In Gerbig v. Gerbig, 60 Nev. 292, 108 P.2d 317, 319, in which a notice of appeal from the judgment was filed with the clerk of this court despite our statutory requirement that such notice be filed with the clerk of the district court, this court held that there was no appeal. So strongly did the court feel in the matter that it even denied the respondent's motion to dismiss the appeal because, as this court there stated, "There is * * * nothing to dismiss."

The prevailing opinion relies strongly on State ex rel. Hinckley v. Sixth Judicial District Court, 53 Nev. 343, 1 P.2d 105, 108. This court did indeed probably go farther in denying certiorari in that case than in any other of its holdings on the point, and stated that it refused to follow the California decisions holding a contrary view. But even the analogy of that case lends much support to relators' contention here. There, COLEMAN, C. J., said: "The question before us seems to be

a simple one. Did the lower court proceed regularly? The complaint charging contempt was filed, citation issued, and the defendants appeared. The court had jurisdiction of the subject-matter and of the defendants; hence it had authority to proceed." The emphasis upon the fact that the statutory requirements had been followed is significant. The statutory requirements in the present case must be found, not in the mere fact that notice of the motion to vacate the default was given, but in sec. 8640, N.C.L., and in the many opinions of this court outlining the requirements of that section. Defendants below, for reasons of their own, deliberately ignored that section. Relators concede in their brief that the court would have had full jurisdiction to exercise a legal discretion in entertaining and acting upon a motion of the defendants to be relieved of their respective defaults on the ground of mistake, inadvertence, surprise or excusable neglect. A proper showing of such statutory ground for relief would have been comparable to the contempt complaint, citation, etc., in the Hinckley case and would have given the court jurisdiction to decide—whether rightly or wrongly. Blundin v. Blundin, 38 Nev. 212, 147 P. 1083, 1084, involved an appeal and not an application for certiorari. Yet this court there found in no uncertain terms that the setting aside of a decree of divorce on the basis of a private letter received by the judge of which no notice was given to the parties was found to have "no legal basis upon which [the] order can be sustained," although it might have been sustained had it "been based upon the statutory ground of mistake, inadvertence, surprise, or excusable neglect."

The prevailing opinion also discusses Yowell v. District Court, 39 Nev. 423, 159 P. 632, which held that as mandamus is the proper remedy to compel a lower tribunal to entertain jurisdiction (where it has erroneously refused to do so), so certiorari is proper to review an erroneous assumption of jurisdiction. The Yowell

case cites with approval Hoffman v. Lewis, 31 Utah 179, 87 P. 167, holding that a lower tribunal proceeding to try an appeal where no appeal had been taken as required by law would be halted by certiorari. I think that is the situation that confronts us here.

In Floyd v. District Court, 36 Nev. 349, 135 P. 922, 923, 4 A.L.R. 646, the district court had granted a motion to dismiss an appeal from a justice's court and the petitioners sought mandamus to compel the district court "to take cognizance and jurisdiction of the said case and try and determine the same on its merits." The respondents insisted that even if the dismissal was error, still it was within the exercise of jurisdiction and that mandamus would accordingly not lie. The question was considered at great length by McCAR-RAN, J., speaking for the court, and by NORCROSS, J., in his concurring opinion. The former said:

"While it may be said that in cases of this character the lower court had jurisdiction to grant or deny a motion to dismiss, nevertheless that court could not refuse to hear a matter upon its merits when it was regularly before it for that purpose, nor could it divest itself of jurisdiction by an erroneous order any more than it could assume jurisdiction by arbitrarily saying that it had the right to proceed."

The latter in concurring said:

"As we said in the recent case of Gamble v. Silver Peak Co. Mines, 35 Nev. [319] 326, 133 P. 936: 'It is the primal duty of all courts to keep within their jurisdiction. Whenever a court takes' any affirmative action, there is an implied adjudication that it has jurisdiction.'

"Without conflict of authority, it is settled that when an inferior court erroneously determines that it has jurisdiction, its judgments and orders will be set aside by the higher courts."

See, also, Radovich v. Western Union Tel. Co., 36 Nev. 341, 135 P. 920, 136 P. 704, which immediately followed the Floyd case and, on certiorari, annulled an order

striking out a cost bill, although the court said: "Unquestionably, a court has jurisdiction to strike out a cost bill not filed within the time allowed by law, but whether an order, made upon motion duly noticed, striking out a cost bill duly filed, is in excess of jurisdiction so that the same may be annulled on certiorari is not so clear." In the Floyd case the court undoubtedly had jurisdiction to entertain a motion to dismiss the appeal, and in the Radovich case the court had undoubted jurisdiction to entertain a motion to strike the cost bill as not timely filed. The first case was an erroneous determination that the court had no jurisdiction. The second was an erroneous assumption of jurisdiction. The one order was annulled by mandamus, the second by certiorari. Both cases are authority for the issuance of the writ in the instant case.

To deny the motion to quash would not necessarily prevent the trial of the main case on the merits. I would deny the motion to quash and would annul the order setting aside the defaults, but without prejudice to the right of the district court to entertain an application of the defendants below for leave to present a motion to be relieved of their defaults on the statutory grounds provided in sec. 8640, N.C.L., and thereafter to entertain such motion when presented and to grant or deny the same in the exercise of its sound judicial discretion. If the court should consent to hear the new application and should upon such hearing grant the ·same, the defendants would then be in position to assert their defenses to the action. The effect of the majority ruling vacating the writ of certiorari heretofore issued is to give the defendants in the main action a temporary shelter in a house built upon the sands of patent error which will, if defendants prevail below, be washed away by the waters of a future appeal, thus leaving the whole thing to be done over again.

As the majority opinion holds that the district court did not exceed its jurisdiction, such opinion does not

discuss the other points raised by the motion to vacate the writ. If any other remedy is open to relators, none such has been suggested in the briefs or oral argument of respondents or defendants. It is obvious, also, that the remedy of appeal would not be adequate.

### ON PETITION FOR REHEARING
June 29, 1949.

*Per Curiam:*

**Rehearing denied.**

BADT, J., dissenting.